# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KALISHA HILL, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 18 C 0881 |
| ) | |
| CONSULTANTS IN PATHOLOGY, S.C., ) | Judge John Z. Lee |
| and PATHOLOGY CONSULTANTS, INC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kalisha Hill ("Hill") filed this lawsuit against her former employer, Consultants in Pathology, S.C. ("CIP"), as well as another company, Pathology Consultants, Inc. ("PCI"), after CIP summarily fired her. Hill alleges race discrimination (Count 1) and retaliation (Count 2) in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

PCI has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6). CIP has filed a motion to dismiss and compel arbitration pursuant to Rule 12(b)(3), or, in the alternative, to dismiss pursuant to Rule 12(b)(6). For the reasons provided, the Court grants PCI's motion to dismiss [8] and grants in part and denies in part CIP's motion [11].

## Background[1]

Hill began working for CIP in 2003. CIP is a group of board-certified pathologists, who provide pathology services to hospitals in Illinois and Indiana. Compl. ¶¶ 3, 8, ECF No. 1.

On January 1, 2009, Hill entered into a new written employment agreement with CIP, the "Shareholder Employment Agreement." *Id.* ¶ 5; *see also* Pl.'s Ex. A, ECF No. 4.[2] The Agreement set forth the terms of Hill's employment and contained an arbitration clause:

> 21. **Arbitration**. Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in accordance with the dispute resolution procedures of the American Health Lawyers Association, and the judgment on the award rendered may be entered in any court having jurisdiction thereof. Such arbitration shall take place in La Porte County, Indiana or such other location as agreed upon by the parties.

Pl.'s Ex. A ¶ 21.

In the fall of 2014, CIP began taking actions that Hill believed violated the Agreement and were discriminatory and retaliatory in nature. Compl. ¶¶ 15, 48–53, 55–60. First, CIP forced Hill to accept a reassignment away from her hospital of choice. *Id.* ¶ 15–17. Hill alleges that the President of CIP, Mark Fritsch ("Fritsch"),

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] Hill refers to the Shareholder Employment Agreement in her complaint, but she filed it as a separate docket entry. Pl.'s Ex. A, ECF No. 4. The Court may consider this document, which is both central to her claims and referenced in the complaint. *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013).

ordered the forced reassignment to "accommodate the preference of a less experienced, non-African American" male pathologist. *Id.* ¶ 17. Second, CIP demanded that Hill turn over income she received from taking a supplemental position as the Chief Medical Officer at her new hospital. *Id.* ¶¶ 22–25, 28–29. Hill contends that no non-African American employees were required to turn over income from outside employment. *Id.* ¶¶ 21, 30. After Hill voiced her objections to these decisions, CIP terminated her employment. *Id.* ¶¶ 15, 26–32.

On February 2, 2018, Hill filed suit against CIP, as well as PCI, characterizing the two companies as a single entity that "provides pathology services in central and northwest Indiana and the Chicago metropolitan area in Illinois." Compl. ¶ 3. In its motion to dismiss, PCI contends that Hill has failed to allege that it does any business in Illinois or that it took any action with respect to her termination. Def. PCI's Mot. Dismiss, ECF No. 8.[3]

CIP also has moved to dismiss, arguing that the Court should compel the parties to arbitrate their dispute under the Shareholder Employment Agreement's mandatory arbitration clause. Def. CIP's Mot. Dismiss, ECF No. 11. In the alternative, CIP argues, the Court should dismiss Hill's Title VII claims for her failure to exhaust them administratively. *Id.*

---

[3] To date, Hill has not responded to PCI's motion [8]. The Court could therefore, in its discretion, dismiss Hill's claims against PCI without analyzing the merits of PCI's motion. *See Woody v. Illinois*, No. 10 C 50017, 2013 WL 4945226, at *2 (N.D. Ill. Sept. 10, 2013) (citing *Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)); *see also Lekas v. Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005). Here, in the interest of completeness, the Court chooses to address the motion on its merits.

3

## Discussion

I. **PCI's Motion to Dismiss**

   A. **Personal Jurisdiction**

      1. **Legal Standard**

The plaintiff has the burden of demonstrating personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). That burden, in a case in which a court rules on the motion to dismiss based solely on the submission of written materials, is to "make out a *prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court should resolve all factual disputes in the plaintiff's favor. *Id.* Importantly, however, "[w]here factual assertions amount only to vague generalizations or unsupported allegations, they are not enough to support personal jurisdiction." *Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1016 n.6 (N.D. Ill. 2009); *see also In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 972–73 (N.D. Ill. 2015).

Because this Court is exercising federal-question jurisdiction, it has personal jurisdiction over PCI if either federal law or Illinois law (the state in which this Court sits) authorizes service of process. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Neither Title VII nor § 1981 authorize nationwide service of process, *see* 42 U.S.C. §§ 1981, 2000e-5(f)(3), so personal jurisdiction in this case is governed by the law of Illinois.

Illinois law permits courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *See* 735 Ill. Comp. Stat. 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). As such, "[t]he key question" in reviewing PCI's motion to dismiss for lack of personal jurisdiction is whether PCI has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Stated differently, each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id.* at 701 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In conducting the "minimum contacts" analysis, the Court must focus on "contacts that the defendant himself creates with the forum State," not the contacts between the forum and the plaintiff. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (internal quotation marks and emphasis omitted).

2. Analysis

PCI contends that it is an Indiana corporation not registered to do business in Illinois, and that Hill's complaint contains "absolutely no allegations" that PCI took "any steps to purposely avail itself of the privilege of doing business" in the state. Mem. Supp. Def. PCI's Mot. Dismiss at 5, ECF No. 9. Further, PCI argues, the complaint contains no allegations that it engaged in any conduct—much less wrongful conduct—in Illinois.

5

The Court concludes that Hill's allegations concerning PCI are sufficient to establish a *prima facie* case of personal jurisdiction over it. Hill's complaint alleges that PCI and CIP are a "single-specialty group practice of 23 board certified pathologist[s]" that provide "pathology services in central and northwest Indiana and the Chicago metropolitan area in Illinois." Compl. ¶ 3. This statement, which the Court must take as true, *see Purdue Research Found.*, 338 F.3d at 782, alleges that PCI, together with CIP, conducts a regular pathology business in both Indiana *and* Illinois. And personal jurisdiction is appropriate when a defendant has "purposefully availed himself of the privilege of conducting business" in the forum state. *Tamburo*, 601 F.3d at 702. PCI has submitted no evidence contradicting the notion that it has "purposefully availed" itself of the privilege of conducting a pathology business in Illinois, *id.*, so there is no genuine dispute of fact for the Court to resolve concerning personal jurisdiction.[4] *See Purdue Research Found.*, 338 F.3d at 782–83.

### B. Failure to State a Claim

#### 1. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[4] The Court notes that PCI did at least attempt to refute Hill's allegations with evidence; however, its efforts fail for two reasons. First, although PCI's motion refers to evidence that it is incorporated in Indiana and that CIP is registered to do business in Illinois, it failed to attach that evidence as exhibits to its motion. *See* Mem. Supp. Def. PCI's Mot. Dismiss at 2 n.1, 2 n.2, 5. Second, even if the Court were to take judicial notice of those documents, neither would support PCI's argument. CIP's corporate status in Illinois is irrelevant to PCI's affiliation with the state. Further, the mere fact that PCI is incorporated in Indiana does not foreclose it from doing business in Illinois.

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

2.  **Analysis**

PCI moves in the alternative for the claims against it to be dismissed under Federal Rule of Civil Procedure 12(b)(6). PCI correctly points out that Hill's complaint contains only *one sentence* pertaining to it—the sentence identifying PCI together with CIP as a group practice of pathologists. *See* Compl. ¶ 3. The remainder of Hill's complaint clearly identifies CIP—and not PCI—as her employer and the party responsible for the unfavorable employment decisions she faced. *See, e.g.*, Compl. ¶¶ 5 (Hill and CIP entered into a written contract for employment), 15 (CIP's President demanded that Hill accept a reassignment), 25 (CIP's President demanded Hill turn over outside income), 52 (CIP made the decision to summarily terminate

7

Hill), 59 (same). Other than a single sentence identifying PCI, it is simply missing from Hill's complaint.

Without identifying any actions taken by PCI, Hill has not stated a plausible claim for relief against it under Title VII, § 1981, or any other law. *See Ashcroft*, 556 U.S. at 678. Even if she intends to argue that PCI should be vicariously liable for the actions of CIP, she has set forth no facts that would support any basis for doing so. *See id.* Hill's allegations against PCI do not meet even the low threshold of Rule 8, which requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Hill has not given PCI "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), and therefore the Court grants PCI's motion to dismiss.

## II. CIP's Motion to Dismiss / Compel Arbitration

### A. Legal Standard

The Federal Arbitration Act ("FAA") mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that places arbitration agreements on equal footing with all other contracts. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "Arbitration is favored and should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO,* 540 F.3d 640,

8

646 (7th Cir. 2008) (internal quotations omitted). "The presumption of arbitrability is particularly applicable where the arbitration provision is broad." *Id.*

Once a court is satisfied that an agreement to arbitrate exists and that the claim at issue is arbitrable under the agreement, the FAA instructs the court to stay proceedings on issues subject to arbitration and provides a mechanism for parties to request that the court compel arbitration pursuant to the agreement. 9 U.S.C. §§ 3–4; *see also Tinder*, 305 F.3d at 733.

### B. Analysis

CIP argues that the arbitration clause found in the Shareholder Employment Agreement requires Hill to pursue her claims against it exclusively through arbitration. Hill does not argue that the Agreement or its arbitration clause is invalid, so the only question before the Court is whether the clause covers Hill's claims against CIP. This question is a matter of Illinois contract law, which recognizes that "the objective in interpreting a contract is to ascertain and give effect to the intent of the parties," focusing in particular on the language used in the contract. *Gore v. Alltel Comm'cns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (quoting *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2012)).

CIP argues that the clause must cover Hill's claims of racial discrimination and retaliation, as courts generally agree that discrimination claims may be subject to mandatory pre-dispute arbitration agreements. It points to *Gilmer v. Interstate/Johnson Lane Corp.*, in which the Supreme Court held that claims under the Age Discrimination and Enforcement Act ("ADEA") could be subject to a pre-

9

dispute arbitration agreement. *See* 500 U.S. 20, 35 (1991). In *Gilmer*, the Supreme Court made clear that the burden is on the party opposing arbitration to show that Congress intended to preclude waiver of a judicial forum for statutory claims. *See* 500 U.S. at 26; *see also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 364 (7th Cir. 1999). The Supreme Court has since reaffirmed the enforceability of mandatory arbitration for claims brought under the ADEA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009). And the Seventh Circuit has expanded the scope of *Gilmer* to include other statutory discrimination claims, including claims under Title VII. *See Koveleskie*, 167 F.3d at 364–65. This Court, following the logic of *Koveleskie*, has concluded that § 1981 claims are also arbitrable. *See McCaskill v. SCI Mgmt. Corp.*, No. 00 C 1543, 2000 WL 875396, at *3 (N.D. Ill. June 22, 2000), *reversed on other grounds,* 298 F.3d 677 (7th Cir. 2002); *Shaw v. DLJ Pershing*, 78 F. Supp. 2d 781, 781–82 (N.D. Ill. 1999); *see also Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1436–37 (N.D. Ill. 1993) (holding pre-*Koveleskie* that § 1981 does not preclude mandatory arbitration).

Hill counters, however, that even if Title VII and § 1981 claims may generally be subject to arbitration, the arbitration clause at issue in this case does not cover them. Her argument rests on an analogy to cases involving collective-bargaining agreements. In that context, the Supreme Court has held that an arbitration clause will be read to enforce arbitration as to statutory claims (as opposed to claims arising out of the collective-bargaining agreement) only if the clause "clearly and unmistakably requires union members to arbitrate" such claims. *14 Penn Plaza*, 556

U.S. at 274; *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998); *see Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017). Hill argues that the same standard applies to the arbitration clause in the Shareholder Employment Agreement, even though it is not a collective-bargaining agreement. Because her arbitration clause is worded broadly and does not clearly identify any statutory claims, Hill contends she is not required to arbitrate her Title VII and § 1981 claims against CIP.

The Court finds Hill's argument unpersuasive. The Supreme Court in *Wright* explained that the "clear and unmistakable" standard does not apply to "an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees." 525 U.S. at 80–81; *see also Del Valle v. Bond Capital, Ltd.*, No. 08 C 646, 2008 WL 4874194, at *2 (N.D. Ill. June 26, 2008). Since then, courts in the Seventh Circuit have read broadly worded arbitration clauses to cover discrimination claims. *See, e.g.*, *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 994, 1005 (N.D. Ill. 2013) (arbitration clause covering "any disputes regarding or arising from [plaintiff's] employment" applied to Title VII claim); *Gagliano v. Cytrade Fin., LLC*, No. 09-4185, 2009 WL 3366975, at *3 (N.D. Ill. Oct. 16, 2009) (clause covering controversies "arising out of, or relating to" employment agreement applied to Title VII claim); *Del Valle*, 2008 WL 4874194, at *2 (broad arbitration clause encompassed claim under Fair Labor Standards Act).

What is more, there is good reason to treat collective-bargaining agreements differently from individually negotiated employment contracts. As the Supreme

Court explained in *Gilmer*, employees who are subject to collective-bargaining agreements are represented by their unions and thus have no personal involvement in the negotiation of their employment contracts. 500 U.S. at 35; *see Wright*, 525 U.S. at 80–81; *Del Valle*, 2008 WL 4874194, at *2. In contrast, as CIP points out, Hill negotiated her employment contract herself and could have sought to change or remove the arbitration clause.

As a final note, "the Seventh Circuit has held that a contract clause that deals with controversies 'arising out of or relating to' an employment agreement picks up claims of employment discrimination." *Gagliano*, 2009 WL 3366975, at *3 (citing *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004)). The Shareholder Employment Agreement uses identical language. Thus Hill's Title VII and § 1981 claims are subject to mandatory arbitration.[5]

## **Conclusion**

For the reasons stated herein, Defendant PCI's motion to dismiss for failure to state a claim [8] is granted. Hill's claims against PCI are hereby dismissed without prejudice. Hill has fourteen days to file an amended complaint as to PCI, if she can do so and comply with Rule 11. If Hill fails to do so, the dismissal will become with prejudice.

---

[5] Because the Court has concluded that Hill's Title VII and § 1981 claims are arbitrable, the Court will not address CIP's alternate argument—that Hill failed to exhaust her Title VII claims administratively. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007); *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978).

Defendant CIP's motion [11] is granted insofar as the Court compels the parties to proceed to arbitration, but denied insofar as it asks the Court to dismiss the action. Instead, the action shall be stayed as to CIP during the pendency of arbitration proceedings.[6] The parties are ordered to file a joint status report within 14 days after the conclusion of such proceedings.

**IT IS SO ORDERED.**          **ENTERED   11/1/18**

_____
**John Z. Lee**
**United States District Judge**

---

[6]     CIP asks the Court to dismiss the action in its entirety. But the FAA is clear: "[U]pon being satisfied that the issue involved in [the pending] suit or proceeding is referable to arbitration," courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court is aware of, but declines to follow, decisions concluding that a judge has discretion to dismiss, rather than stay, an action when all remaining claims are subject to arbitration. *See Soucy v. Capital Mgmt. Servs., L.P.*, No. 14-cv-5935, 2015 WL 404632, at *6 (N.D. Ill. Jan. 29, 2015); *Chambers v. Aviva Life & Annuity Co.*, No. 12-cv-9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (collecting authorities).